Coös,
Dec., 1899.

FRANKLIN *&a. v.* NEW HAMPSHIRE FIRE INSURANCE CO.

SAME *v.* PALATINE INSURANCE CO.

NEW HAMPSHIRE FIRE INSURANCE CO. *v.* FRANKLIN *& a.*

PALATINE INSURANCE CO. *v.* SAME.

An agreement for arbitration is revoked by the refusal of either party to proceed further, or by the withdrawal of an arbitrator prior to the publication of an award.

The clause in the New Hampshire standard form of fire insurance policy, providing for a reference in case of difference of opinion as to the amount of loss, does not require an arbitration as a condition precedent to a suit on the policy, nor limit the damages recoverable by the insured to the sum awarded by referees.

A stipulation in a fire insurance policy, that a loss shall be paid within sixty days after formal proof thereof, does not affect the right of the insured to begin an action on the policy if the company fails to adjust his loss within fifteen days after receipt of notice.

ASSUMPSIT, to recover on policies of insurance, and PETITIONS, by the insurers, for the appointment of arbitrators. Facts agreed.

The policies were in the standard form. The insurance was upon furnishing goods and clothing. The fire occurred February 4, 1899. On February 13, the parties agreed upon referees to adjust the loss, who proceeded in accordance with the submission until February 20, when the referee chosen by the insured with-

drew and refused to participate further in the appraisal. On February 23, and before the appraisal was completed, the insured served upon the insurers' agents, and upon the two referees who had not withdrawn, a notice of refusal to proceed with the arbitration. The insured were notified of the appraisal by the insurers prior to March 6, 1899, when proof of loss in the usual form was made against both companies, and March 27, 1899, suits were brought upon the policies. The insurers served their petitions on the insured April 17, 1899. The insurers do not deny their liability, and have always been willing to pay the award.

*Daley & Goss,* for Franklin & Salomon.

*Drew, Jordan & Buckley,* for the insurance companies. The policy provides that "in case difference of opinion shall arise as to the amount of any loss under this policy, other than on buildings totally destroyed, unless the company and the insured shall, within fifteen days after notice of the loss, mutually agree upon referees to adjust the same, either party may, upon giving written notice to the other, apply to a justice of the supreme court, who shall appoint three referees, one of whom shall be thoroughly acquainted with the kind of property to be considered, and their award in writing, after proper notice and hearing, shall be final and binding on the parties."

Recognizing the validity of this provision, the insurers and the insured agreed in writing upon referees to adjust the loss. The referees or arbitrators assumed the duties, qualified by taking and signing an oath to faithfully and impartially discharge the duties committed to them, and proceeded with reasonable despatch to perform those duties. Their good faith is not impugned; no irregularity is alleged; and the first question specifically raised by the case is as to the binding effect of the arbitration and award, or whether, under the provisions of the policy, the statutes of New Hampshire, and the written agreement for submission and the agreed facts, the submission is revocable.

Whatever the ancient policy of the law (expressed in the phrase that "courts are jealous of their jurisdiction") may have been, the modern rule, for obvious reasons, favors arbitration; and courts will always put as liberal and comprehensive a construction upon agreements to submit as the apparent intention of the parties will allow. Morse Arb. 437; *Burleigh* v. *Ford,* 59 N. H. 536; *Ford* v. *Burleigh,* 60 N. H. 278; *Barker* v. *Belknap,* 39 Vt. 168; *Comery* v. *Howard,* 81 Me. 421. The contract or agreement for submission in this case, unless cause to the contrary appear, should receive a like liberal and comprehensive construction.

The agreement, in pursuance of the foregoing quotation from the policy, authorized the appraisers simply to "appraise and estimate the loss upon the property damaged and destroyed by fire," and provided that "this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage *only* to the property hereinafter described, and shall not determine, waive, or invalidate any other right or rights of either party to this agreement." The insurance company having admitted its liability for some amount, if indeed such was not the legal effect of submitting the determination of the amount of loss to arbitration (*Sampson* v. *Young*, 50 N. H. 62, 64), the sole question submitted, according to the terms of the policy and the provisions of the signed submission, was the determination of the amount of loss. The question of liability being eliminated, the parties by their agreement have simply determined a tribunal for the assessment of damages. Hence provisions in policies of insurance providing for the selection of such a tribunal by mutual agreement, or for the appointment by a justice of the supreme court of such referees, whose finding as to the single question of amount of loss "shall be final and binding on the parties," are held to be reasonable and valid, and must be complied with. May Ins., s. 493; Joyce Ins., s. 3247.

The proceedings for the ascertainment of the amount of loss in the case at bar stand upon firmer ground than a mere common-law arbitration and award. "The form of policy and insurance contract now in force in the state is continued until the insurance commissioner shall change it. He is authorized to change the form of such contracts from time to time as he may think the public good requires." P. S., c. 170, s. 1. The case finds that the policies in suit are in the standard form. They are, therefore, in legal effect a part of the positive statutory law of the state; the legislature has established a tribunal for the ascertainment of the amount of loss occurring under the provisions of the policy; and in construing the words contained in the clause providing for the appointment of referees for the ascertainment of the amount of loss, — "their award, in writing, . . . shall be final and binding upon the parties," — the same force and effect are to be given those words as to any other expressed intent of the law-making body. Nor is this open to objection on constitutional grounds, since the party may decline to enter into any agreement to waive his constitutional right to trial by jury. He is free to act; he may either decline to make the contract, or he may make it with a provision as to the form of his remedy and the tribunal before whom he will establish his right. May Ins., s. 494. In the case at bar the insured may well be held to have expressly waived his

right to an assessment by jury of the amount of damage or loss (if such right exists) by entering into a contract providing for a different mode of assessment, having the sanction, if indeed it is not the creature, of the law-making power of the state. *Zallee* v. *Insurance Co.,* 44 Mo. 530; *Elliot* v. *Insurance Co.,* L. R. 2 Exch. 237.

There can be no doubt, upon authority, that if the appraisers or referees had been appointed by a justice of the supreme court, according to the alternative provision of the arbitration clause of the policy, the arbitration would be irrevocable; for it would then have all the force and effect of an arbitration by rule of court, which, according to all the authorities, is irrevocable. *Dexter* v. *Young,* 40 N. H. 130; *Cumberland* v. *Yarmouth,* 4 Me. 459; *Sutton* v. *Tyrrell,* 10 Vt. 74; *Haskell* v. *Whitney,* 12 Mass. 47; *Brickhouse* v. *Hunter,* 4 Hen. & Mun. 363. It is difficult to see what valid distinction there is between the binding force of a submission under such clause and a submission by agreement of the parties under the alternative clause having the same legislative sanction. That the parties agreed upon the referees instead of invoking the aid of the court to secure their appointment, both modes having equal legislative authority and sanction, affords no logical reason for ascribing to the one mode a force which is denied to the other. The commissioner, acting under the powers delegated to him by the legislature, has prescribed a form of contract for the parties, and in so doing has given no evidence that it was the intent of the legislature, acting through him, to give more effect to the words "shall be final and binding" in case the referees were appointed by the court than is to be attached to the same language in case the referees are selected by agreement of the parties.

The loss was payable within sixty days after proof thereof. There was no default, therefore, until the expiration of sixty days, exclusive of the day on which proof was made. P. S., *c.* 2, *s.* 34; *Annan* v. *Baker,* 49 N. H. 161, 169. Proof of loss was made March 6, 1899. The insurance companies did not neglect for fifteen days thereafter to adjust the loss, because they had, prior to March 6, notified the insured that the loss had been adjusted at the sum of $361.39. To ask the companies to act again in the same matters is to demand a readjustment upon the same evidence and concerning the same subject-matter. Having given the insured notice of the amount of loss which they had determined upon, the companies had "adjusted" the loss, according to the universal acceptation of that word. The primary purpose of an adjustment is that the insured may know the amount which the company acknowledges due. This information the insured had prior to their written proof of loss, and reiteration by the companies in subse-

quent correspondence is immaterial. The insured knew all they had a right to know. The loss had been adjusted.

Remembering that the companies had sixty days within which to pay the loss, that they had adjusted the loss, and that there was "a difference of opinion as to the amount," let us read these provisions together for the ascertainment of the true construction of the contract : "In case difference of opinion shall arise, . . . unless the company and the insured shall, within fifteen days after notice of the loss, mutually agree upon referees to adjust the same, either party may . . . apply to a justice of the supreme court, who shall appoint three referees, one of whom shall be thoroughly acquainted with the kind of property to be considered, and their award in writing . . . shall be final and binding on the parties." It is plain the phrase "within fifteen days" grammatically and logically modifies the verb "shall . . . agree," and prescribes the time before which neither party may petition the court ; but no limit is placed upon the time within which, after the expiration of fifteen days, either party may bring such petition, except that fixed by the company's duty to pay within sixty days after proof of loss.

By agreement, if not by law, the parties have stipulated by what evidence the amount of liability of the insurers shall be determined, namely, upon the report of a board of three referees, " one of whom shall be thoroughly acquainted with the kind of property to be considered." The case differs in no essential respect — except that it is strengthened by having the legislative sanction — from that class of cases where the report of an engineer as to the kind and amount or price of work done by contractors is considered a condition precedent. *Smith* v. *Railroad,* 36 N. H. 458, 487. By the contract in the present case, it is required that the price shall be fixed, *i. e.,* the amount of loss determined, by a third person, upon request of either party ; and the insurers seasonably made their request. To the same effect as *Smith* v. *Railroad, supra,* are : *United States* v. *Robinson,* 9 Pet. 319, 327 ; *Martinsburg etc. R. R.* v. *March,* 114 U. S. 549 ; *Hamilton* v. *Insurance Co.,* 136 U. S. 242, 254 ; *Gauche* v. *Insurance Co.,* 10 Fed. Rep. 347 ; *Herrick* v. *Belknap,* 27 Vt. 673 ; *Hood* v. *Hartshorn,* 100 Mass. 117, 122 ; *Williams* v. *Railroad,* 112 Mo. 463 ; *Holmes* v. *Ricket,* 56 Cal. 307. Authorities might be multiplied, for they are abundant. If such stipulations are held to be conditions precedent in actions upon building contracts, leases, etc., there appears no good reason why they should not receive the same construction in contracts of insurance.

If it is well that a party may agree upon the evidence upon which and the tribunal through which his damage or loss shall be

ascertained in the one kind of contracts,—if it be, as it has often been declared to be, a beneficent rule that permits him to have such questions decided by a competent, impartial, inexpensive, and expeditious process, in one class,—it must of necessity be so in another similar class, unless some satisfactory reason to the contrary be shown. In the case at bar there is not, it is admitted, an express declaration that a reference of the amount of loss is a condition precedent to the right of action. Neither did such a stipulation appear in most of the cases last cited.

The insurers having seasonably petitioned the court for the appointment of referees according to the provisions of the policies, and those provisions being in legal effect conditions precedent, the actions of assumpsit should abate, and the referees be appointed according to the prayer of the petitions ; or, if the actions are to remain upon the docket, it should be upon condition of paying the companies' costs to this time, and for the sole purpose of entering judgment on the report of the referees agreed upon, or those to be hereinafter appointed, according to the legislative contract to which the parties have given their assent.

PEASLEE, J. The agreement of the parties to submit their differences to arbitration was revoked by the refusal of one of the arbitrators to act, and the notice given the insurers by the insured. It is the well-settled law of this state that either the refusal of the arbitrator to perform the duties necessary to carry out the purpose of the agreement, or the withdrawal from the compact of either party before the award is published, renders the agreement of no effect. *Wright* v. *Cobleigh*, 21 N. H. 339, 342 ; *Kimball* v. *Gilman*, 60 N. H. 54.

The contract of insurance contained the following provision : " In case difference of opinion shall arise as to the amount of any loss under this policy, other than on buildings totally destroyed, unless the company and the insured shall, within fifteen days after notice of the loss, mutually agree upon referees to adjust the same, either party may, upon giving written notice to the other, apply to a justice of the supreme court, who shall appoint three referees, one of whom shall be thoroughly acquainted with the kind of property to be considered, and their award in writing, after proper notice and hearing, shall be final and binding on the parties." The policy being in the form approved by the legislature, it is argued that this provision is a condition precedent to the right to sue ; that the parties must first arbitrate, and then, if the insured chooses, he may sue ; but upon the question of damages the only evidence admissible will be the award of the arbitrators. Being the only admissible evidence, it would be conclusive on the

question. Like a formal judgment, it would import absolute verity. He might sue for his loss, but he could not litigate one of the principal questions involved. The contract, it is said, is not to pay the loss, but only to pay what three men shall say the loss is. That is, since the adoption of this form of policy in 1885, every case in which the amount of loss has been litigated has been erroneously conducted; and in each case the only inquiry on this branch should have been, "What is the sum fixed by arbitrators?"

The contention is that the referee clause is of the very essence of the contract; but beyond the policy is the statute, which the policy is not allowed to contradict (P. S., c. 170, s. 18), and which shows that the legislature did not understand that the question of the amount of loss had been taken from the court. Section 13, chapter 170, of the Public Statutes, provides that "if upon trial the insured recovers more than the amount determined by the insurers," etc. If the only contract made by the insurer was to pay the amount determined by arbitrators, this provision of the statute is meaningless; but if the statute means, as it must, that the amount of loss may be litigated, the referee clause cannot mean that an award of arbitrators is the only foundation for a suit.

It is further argued that, after an adjustment by the company, it is the right of either party to compel a reference by a seasonable application therefor; that this is the contract which the legislature has provided for the parties; that by entering into it the insured waives any rights conflicting with its provisions; and that for various reasons such a law is wise and equitable, and should be upheld. This contention is answered by the provision that if the insured is dissatisfied with the adjustment made by the insurer he may bring his action. P. S., c. 170, s. 10. The adjustment here referred to is the amount which the insurer is willing to pay, or the sum it fixes as the amount of the loss. Even if the parties are agreed as to all other questions, dissatisfaction with the insurer's estimate of the loss entitles the insured to sue. If he may bring suit, he is not bound to abandon the action because of a stipulation in the policy which conflicts with the statutory provision under which the suit was brought. The statute must prevail over the policy contract, for such was the legislative intent. "This chapter shall be a part of every contract of insurance. . . . No waiver of any part of it shall be set up by the insurer, and every stipulation in the contract in conflict with it shall be void." P. S., c. 170, s. 18 ; Perry v. Insurance Co., 67 N. H. 291. This section was enacted in 1879 (Laws 1879, c. 13), immediately after the decision that a provision in the policy which conflicted with the statute was a waiver of the latter. Tasker v. Insurance Co., 58 N. H. 469 (decided in August, 1878). Since 1879, the

law which is now chapter 170 of the Public Statutes has been a part of every contract of fire insurance made in this state.

In 1885 it was enacted that the insurance commissioner should provide a standard form of policy, and that all companies should conform to the regulations prescribed by him. Laws 1885, *c.* 93, *s.* 3. Acting under this authority, the commissioner prescribed the form since known as the " New Hampshire standard form of policy." Ins. Com. Rep., 1885, *pp.* 5, 73. Grave doubts arose as to the binding effect of the commissioner's action. A similar statute, passed by the same legislature, was held to be invalid as an attempted delegation òf legislative power. *In re School Law Manual*, 63 N. H. 574. In the revision of 1891, all doubts were removed by the enactment that " the form of policy and insurance contract now in force in this state is continued until the insurance commissioner shall change it." P. S., *c.* 170, *s.* 1. At the same time all the earlier statutory provisions, including the law of 1879 as to waiver, were re-enacted. There is no evidence of an intent to remove or modify the protection given to the insured, or to make the policy the controlling factor. On the contrary, the legislature expressly provided that, as between the policy and the provisions of chapter 170 of the Public Statutes, the latter should govern. The form of policy there referred to must be the one then and now in use, for any other form was forbidden. No evidence being found of a legislative intent to deprive the parties of a jury trial upon this question, the language of the statute is to be given its ordinary meaning. The history of insurance legislation in this state is one of constant effort to provide for the speedy adjustment and payment of losses, to take away technical and inequitable defences, and at the same time to protect insurers from fraudulent claims and vexatious suits. The statutes are to be so construed as to give effect to this purpose. It should not be defeated by a strained construction of the language of the contract, especially when, as in this case, the result would be to nullify the express provisions of the statute. The parties insured are entitled to a jury trial upon the question of the amount of their loss.

The further defence is suggested that the actions are premature, because they were brought within sixty days after formal proof of loss. The only ground for this objection is the stipulation in the policy that the insurers shall pay within sixty days. From this it is argued that until that time has elapsed there is no default, and so no action can be maintained. Like the other defences set up, this is answered by the statute. " If the company neglects to adjust the loss within fifteen days after receiving notice of it, . . . the insured may commence an action upon the policy." P. S.,

*c.* 170, *s.* 9.　If the notice of the amount awarded by two of the three arbitrators was an adjustment, suit might be brought at any time within six months after it was received.　P. S., *c.* 170, *s.* 10. If the notice was not an adjustment, the suits were properly brought because of a failure to adjust within fifteen days after proof of loss.　In neither view are the actions premature.　As a decision of the question whether the notice was or was not an adjustment will be of no practical importance unless the insured fail to recover a larger sum (P. S., *c.* 170, *s.* 13), it has not been considered.

*Case discharged.*

All concurred.